## In re SHIPLEY.
### No. 3612.

District Court, S. D. West Virginia.
Dec. 26, 1942.

Okey P. Keadle, of Huntington, W. Va., for bankrupt.

Maxwell W. Flesher, of Huntington, W. Va., for E. W. Jones, objecting creditor.

HARRY E. WATKINS, District Judge.

This case is before me upon two petitions of review, one filed by the bankrupt, and another filed by E. W. Jones, a creditor. Jones complains of an order entered by the referee on the 9th day of May, 1941, in which the referee overruled all of the objections filed by him to the bankrupt's discharge. The bankrupt is aggrieved at the same order wherein it denies him a discharge for another reason assigned by the referee, but not covered by any specification of objection.

The specifications of objection to discharge filed by Jones were as follows:

"(1)   That the bankrupt has destroyed, mutilated, falsified, concealed, or failed to keep or preserve books of account or records, from which his financial conditions and business transactions might be ascertained to wit:

"(a)   The accounts receivable of the bankrupt, which were collectable, generally, have never been filed as assets of this estate, and the general ledger containing these accounts has never been delivered to the Court or Trustee.

"(b)   The general ledger of the bankrupt will show approximately $13,000.00 in notes receivable and approximately $8000.00 in accounts receivable, very few of said items having been delivered to the Trustee or Referee. The partnership of Woods and Shipley owed about $6000.00 on open accounts and about $4000.00 in notes, only a small portion of which is accounted for in these proceedings.

"(c)   The bankrupt has not listed or accounted for the following item or delivered any accounts or records to indicate the same.

"(1)   Note due the bankrupt from John Ferrell at Chapmanville, West Virginia, in the approximate sum of $300.00.

"(2)   Judgment in favor of the bankrupt against Mose Lindsey for the sum of $300.00, rendered by Carl S. Mynes, J. P., C. C., W. Va.

"(3)   Judgment in favor of the bankrupt against Quincy and Howard Carr in the sum of $146.93, rendered by Squire Spurlock, J. P., C. C., W. Va.

"(4)   Judgment in favor of the bankrupt against Richard R. Cook for $166.87.

"(5)   Note due the bankrupt from Cabell Kessee for approximately the sum of $60.00.

"That all of the foregoing items were carried in the inventory of the bankrupt's records and were written in his inventory of December 31, 1938, said inventory being balanced against the bankrupt's books and records on January 5, 1939. The inventory book submitted in this hearing has the leaves torn therefrom and the sheets missing that had on them the inventories of notes and accounts.

"(2)   For other reasons apparent on the face of the record."

In the findings of fact the referee specifically finds against the objecting creditor as to each of said specifications. It is true that as to specifications 1(a), the referee does not use the exact language of the specifications in his adverse findings of fact, but Finding of Fact No. 2 is that "the accounts receivable of the bankrupt were disclosed and delivered to the Trustee". In my opinion, this constitutes an adverse finding of fact as to such specifications.

192

■ These findings by the referee are based upon conflicting evidence, involving the credibility of witnesses. Whether the referee erred depends upon whose evidence is to be believed. When the findings of a referee are based upon conflicting evidence involving questions of credibility, and the referee has heard the witnesses and observed their demeanor, great weight attaches to his conclusions, and the weight of authority is that the district judge, while scrutinizing with care his conclusions upon a review, should not disturb his findings unless they are manifestly unsupported by the evidence. Matter of Musgrave, D.C. N.D. W.Va. 1939 27 F.Supp. 341. In my opinion there is evidence to support such findings of the referee. The order of the referee in overruling the specifications of objections to discharge filed by Jones is affirmed.

The referee denied a discharge on the following ground: "That the bankrupt obtained a judgment before Irvin Topping, a justice of the peace of Guyandotte District, Cabell County, West Virginia, against one C. A. Blackburn, which judgment was obtained prior to bankruptcy, and which the bankrupt failed to list as a part of his assets; that his failure to do so was a concealment of assets, which concealment constitutes sufficient grounds for the denial of a discharge to the bankrupt". No objection to the discharge of bankrupt on that ground, nor any specification in writing relating to such objection, was filed by anyone.

■ As prescribed by Section 14, sub. b, of the Bankruptcy Act, 11 U.S.C.A. § 32, sub. b, the referee by order of June 26, 1940, fixed December 12, 1940, as the last day for filing objections to discharge, and notice that such date had been fixed was duly given. On December 12, Jones, a creditor, filed the only specifications of objection to bankrupt's discharge, none of which refer to the Blackburn judgment. On December 17 the referee mailed notices of a hearing to be held on January 22, 1941, "for the purpose of a hearing upon objections filed herein on December 12, 1940, by E. W. Jones, a creditor of the bankrupt, to the bankrupt's discharge." At a hearing held on February 21, 1941, (a continuation of the hearing set for January 22, 1941), the bankrupt and other witnesses were examined in regard to the Blackburn judgment. From such testi-mony, the referee entered his order denying the discharge on account of the Blackburn judgment only. Since there was no compliance with the requirements of General Order 32, 11 U.S.C.A. following section 53, relating to filing of objections, notice of hearing thereon, and actual hearing upon the Blackburn judgment matter, the referee was without authority to deny the bankrupt a discharge on that ground. There is nothing in the record to show that bankrupt has waived the filing of specifications, notice, and hearing upon the Blackburn judgment.

■ Furthermore, I am convinced that the evidence upon the Blackburn judgment matter does not support the finding of the referee. The uncontroverted testimony of the witnesses is to the effect that in December, 1939, about six months before adjudication, the bankrupt sold the Blackburn note to A. P. Martin, and at the time of such sale, Shipley agreed to attend to the collection of the note for Martin. This arrangement between Shipley and Martin explains the action of Shipley in bringing suit on the note in the name of Huntington Motor Truck Company, owned by Shipley, after bankruptcy. The fact that the bankrupt filed suit in his own name, doing business as Huntington Motor Truck Company, after bankruptcy, and collected payments upon the judgment, is the basis for the referee's finding. Without some explanation, this evidence would indicate a withholding of assets, but the explanation offered is uncontradicted and convincing. The uncontradicted testimony that Shipley promptly turned over to Martin the money collected by him on the judgment confirms the testimony of the bankrupt and Martin in regard to sale of the note. If the referee concluded that because the suit was brought in the name of Huntington Motor Company, such fact alone would make the note the property of Huntington Motor Company, he was in error, because under the law of West Virginia, such a suit may be brought in the name of the assignor without showing the name of the assignee. Clarke v. Hogeman, 13 W.Va. 718; Scraggs v. Hill, 37 W.Va. 706, 17 S.E. 185. Martin is a business man, not related or otherwise connected with the bankrupt, and his uncontradicted evidence must be given great weight. In this respect the order of the referee should be reversed and the bankrupt granted a discharge.

For these reasons, the portion of the referee's order which directs the bankrupt to pay to the trustee $20 collected on the Blackburn judgment should also be reversed. Likewise, I reverse that portion of the referee's order which directs the bankrupt to pay unto E. W. Jones, objecting creditor, the sum of $50 which had been deposited by Jones to cover costs of discharge hearing. The specifications of objections to discharge should be dismissed at the cost of the objecting creditor.

Affirmed in part; reversed in part.