In the Matter of Clarence Paul ROBERTS, Bankrupt.

In the Matter of Becky Mangum ROBERTS, Bankrupt.

Nos. B-39-57, B-40-57.

United States District Court
M. D. North Carolina, in Bankruptcy.

Sept. 11, 1959.

**362**

John T. Manning and C. Wallace Vickers, Durham, N. C., for Clarence Paul Roberts and Becky Mangum Roberts, petitioners.

W. Harold Edwards, Chapel Hill, N. C., for Henry V. Dick and Co., Incorporated, respondent.

STANLEY, District Judge.

This matter is before the court on the petition of Clarence Paul Roberts and Becky Mangum Roberts, bankrupts, for review of an order of the referee in bankruptcy, dated March 27, 1958, which denied the discharge of the bankrupts.

On November 6, 1957, Clarence Paul Roberts and Becky Mangum Roberts filed separate voluntary petitions for bankruptcy. Separate adjudications were made on the same date.

The bankrupts are husband and wife. The two cases were consolidated for administration, and have been handled by the same trustee.

On April 16, 1958, Henry V. Dick and Company, Incorporated, a creditor, timely filed objections to the discharge of the bankrupts. The first specification objected to the discharge under Section 14, sub. c(2) of the Bankruptcy Act (11 U. S.C.A. § 32, sub. c(2)) for failure to keep adequate records, and the second specification objected to the discharge under Section 14, sub. c(4) of the Bankruptcy Act (11 U.S.C.A. § 32, sub. c(4)) for that, within the twelve month period immediately preceding the filing of the petions, the bankrupts, with intent to hinder, delay and defraud their creditors, transferred all their real estate without consideration.

The referee, after hearing, made certain findings of fact and conclusions of law, which are contained in the order denying the discharge. The order concluded that the evidence was insufficient to establish that the bankrupts had failed to keep proper records and books, but did establish that the bankrupts had, within twelve months prior to the bankruptcy, transferred their property with the intent to hinder, delay and defraud their creditors, and both bankrupts were denied their discharge.

Viewing the record as a whole, it fairly appears that Clarence Paul Roberts, who was in the contracting business, and his wife, Becky Mangum Roberts, the bankrupts, commenced experiencing

financial difficulties a year or two before the bankruptcy. These difficulties grew steadily worse, and resulted in their placing a mortgage on all their real estate. During the months of May and June of 1957, about six months prior to the bankruptcy, there were some twenty or twenty-five law suits filed against the bankrupts. While these law suits were pending, and with the possibility of a judgment being rendered in one or more of them at any moment, the bankrupts conveyed to Bobby R. Roberts and his wife, Ruby M. Roberts, the brother and sister-in-law of the bankrupt, Clarence Paul Roberts, several tracts of property which were held by the bankrupts by the entirety. The conveyances constituted all the real estate owned by the bankrupts at that time.

There was no consideration for the conveyances. However, the various deeds contained documentary stamps which indicated a value of several thousand dollars in excess of the existing mortgages. Further, the bankrupt, Clarence Paul Roberts, testified that the property was sold to his brother with the understanding that the property was to be resold, after which he and his wife were to receive the sum of $6,000. While it definitely appears that the property had a value in excess of the mortgages, it is difficult, by reason of the circumstances under which the property was conveyed and the relationship of the parties, to determine the equity of the bankrupts with any degree of certainty.

The bankrupts insisted that all the property was in the process of being foreclosed at the time of the conveyances, but this was not further substantiated. In this connection, it is significant that the bankrupts were still living on one of the tracts of property on March 4, 1958, the time of the hearing on the objection to discharge, and that they had paid no rent on the property since its conveyance. The bankrupt, Becky Mangum Roberts, testified that she and her husband had taken the property in question in both their names, but that her husband handled all the property and that all she did

was to sign the deeds of conveyance. However, she admitted that she knew of the encumbrances against the property and that she and her husband were defendants in numerous law suits.

When it is shown to the satisfaction of the court that there are reasonable grounds for believing that the bankrupts have transferred their property with intent to hinder, delay and defraud their creditors, the burden of proving that they had not committed such act is upon the bankrupts. Section 14, sub. c. of the Bankruptcy Act (11 U.S.C.A. section 32, sub. (c)); Mountain Trust Bank v. Shifflett, 4 Cir., 1958, 255 F.2d 718. Further, the court is required to accept the findings of fact in the referee's order, unless clearly erroneous. General Order in Bankruptcy No. 47, 11 U.S.C.A. following section 53; Rule 53(e) (2), Federal Rules of Civil Procedure, 28 U.S.C.A.; Mountain Trust Co. v. Shifflett, supra; In re Supnick, D.C.E.D.Pa.1958, 160 F.Supp. 355; In re Mizell, D.C.M.D. N.C.1958, 166 F.Supp. 224.

While the intent to hinder, delay and defraud creditors must be a specific intent, and not merely a constructive intent, and the mere act of transfer of an asset is insufficient to bar discharge, here there is substantial evidence to support the conclusion that the transfer was made with the specific intent to hinder, delay and defraud creditors. Indeed, when consideration is given to the testimony of the bankrupts concerning the circumstances surrounding the transfers, it is difficult to understand how the referee could have reached a different conclusion.

While the point was not raised before the referee, the principal contention now made by the bankrupts is that the interest of a tenant by the entirety cannot pass to a trustee in bankruptcy while both husband and wife are living, and that the title to the entirety property in question could not have passed to the trustee or become an asset of the estate of either bankrupt. There is no occasion to discuss this principle of law for the reason that it is not applicable

to the factual situation here presented. The fact that the interest of a tenant by the entirety cannot be an asset in bankruptcy for the payment of the individual debts of a bankrupt does not mean that such property cannot be an asset of both tenants for the payment of their joint debts. This question seems to have been fully answered in In re Pennell, D.C.W. D.Pa.1935, 15 F.Supp. 743, 744, where it is stated:

> "Our opinion is that when the estate of husband and wife came into court on separate adjudications in bankruptcy, the trustee takes the estate held by them by entireties, but for convenience in administration, the two bankruptcy estates should be consolidated."

In applying the foregoing principles of law to the factual situation here presented, and giving proper weight to the findings of the referee, it is concluded that the findings and conclusions of the referee in regard to the fraudulent conveyances should be affirmed and that the bankrupts should be denied their discharge.

Counsel for the objecting creditor will present a decree in conformity with this opinion.